Frank A. Gtxlotta, J.
This article 78 proceeding to review a denial of petitioner’s application for transfer of a liquor license raises the interesting question as to how petitioner can Secure an opportunity to present his side of the case before respondents make a final determination with respect to his qualifications to hold a liquor license.
It appears that he was the owner of a bar and grill in Hemp-stead for about five years and was licensed for all of that time. *1003 He sold out in 1961, and has remained out of this business until the present application was made in 1962, to take over an existing licensed restaurant in Freeport. His application was approved by the Local Board, but denied by the State Liquor Authority without a hearing as were two (2) requests for reconsideration which were sought so that petitioner might present his version of the incidents on which respondents’ rejection apparently was based. These are listed in cryptic form in the notice of disapproval in what ostensibly would appear to be a transcript of police blotter entries. However, some of these entries, running from 1956 to 1961, are preceded by the words “ dis. premises ” or “ disapproved premises ” which, the court has ascertained upon inquiry, do not appear on the police reports. The origin or meaning of these words is shrouded in mystery since during all these years the Hempstead premises were duly licensed and functioning. It would appear that someone has placed his own interpretation on the events as recorded.
This is exactly the point which petitioner makes. He says the State Liquor Authority has taken every disorderly incident which occurred in this admittedly “tough” neighborhood in Hempstead and attributed it to him, although his place was run in an orderly manner. Where the incident actually took place in his premises, his prompt calling of the police, he contends, in no way reflects on his suitability to hold a liquor license and as to the other incidents, he should not be taxed with them at all.
It is indeed hard to understand why for instance, as a record against petitioner, the respondents have listed a summons for failure to pay wages in 1956, which was dismissed in District Court, and even harder to understand the listing of a 60-day suspension of his license in 1957, which was subsequently annulled by the Appellate Division, or why petitioner’s calling the police when he learned that a patron had a loaded revolver on his person, is a record against petitioner.
Nor do we know what respondents’ version is, because their contention is that they need give none, and they have not done so. It is their position that section 64 of the Alcoholic Beverage Control Law, which by its terms adopts the procedure laid down in section 54 of the same act, only requires a hearing when there is an original disapproval by the Local Board but not when there is an original approval by it and the subsequent denial comes from the State Liquor Authority as it did in this case.
Be that as it may, there is still a duty to act reasonably and the court review provided for in section 121 of the Alcoholic Beverage Control Law would indicate that there must be a sound basis for the Authority’s actions.
*1004 Neither party here has requested a transfer to the Appellate Division in the first instance, although this would appear to be a case coming under subdivision 6 of section 1296 of the Civil Practice Act. While there was no hearing, nevertheless the issue is whether there were sufficient factual incidents to justify the respondents’ action. This court’s conclusion is that there were not.
In view of the provision made in section 1296 to retain the matter for initial determination at Special Term in doubtful cases, and allow the Appellate Division to dispose of it thereafter in the manner it determines to be proper, the court will do so and accordingly annuls the determination appealed from and directs that a license issue.